IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

BASSAM M. ALKHOLY                                             PLAINTIFF

v.                                                 CIVIL ACTION NO. 3:25-CV-066-RPC-RP

UNIVERSITY OF MISSISSIPPI                                DEFENDANT

ORDER AND MEMORANDUM OPINION

On March 5, 2025, Bassam Alkholy initiated this lawsuit by filing a Complaint [1] against the University of Mississippi (UM).[1] Alkholy alleges that UM's failure to hire him violated his rights under Title VII and the ADEA. Now before the Court is UM's Motion for Summary Judgment [62]. The Court, having reviewed the parties' respective filings and the applicable authorities, hereby GRANTS the Motion for Summary Judgment [62].

*Relevant Background*

In 2010, Alkholy was hired by UM as an Arabic Instructor in the Department of Modern Languages to teach for the 2010-2011 academic year. According to the declaration of Dr. Allen Clark, Dr. Donald Dyer, the Chair of the Department of Modern Languages at the time, and Dr. Clark were members of the search committee that recommended Alkholy be hired for the position. (Dkt. 62; UM Exhibit 1 at 1). Alkholy taught his classes for the fall semester of 2010, but around December 2010, he notified UM that he had to go overseas to be with his family due to a medical emergency. Alkholy acknowledged that Dr. Dyer attempted to persuade him to return and finish out his classes for the spring semester and even add some classes for the summer. (Dkt. 66; Alkholy Exhibit MMM). Alkholy declined, resigned and did not return to finish out his spring semester

---

[1] Alkholy also filed suit against Dr. Allen Clark and Kimberly DeVries. However, per his Amended Complaint [13], filed on April 8, 2025, these parties were terminated from the case.

1

classes. Dr. Allen Clark was the only other Arabic instructor employed by UM at the time and he had to take over Alkholy's classes in the spring because it was too late to hire anyone else.

In 2012, Alkholy noticed that UM had posted a job opening for an Arabic Instructor and he reached out to Dr. Dyer to express his interest. At that time, Dr. Dyer explicitly informed Alkholy that his resignation could be a factor in any future job considerations at UM. (Dkt. 62; UM Exhibit 2). He was not hired for the position in 2012.

In October 2023, UM once again posted a job opening for an Arabic Instructor. The job posting sought an instructor to "teach all levels of Arabic Flagship program." It required that candidates demonstrate "substantial training and experience in teaching Arabic to American university students, as well as work in second language acquisition." The candidates needed an "M.A. degree or equivalent in Arabic or second language acquisition at the time of appointment, native or near-native proficiency in Arabic and [the] ability to teach one of the major dialects of Arabic[.]" Alkholy was enrolled at UM as a Ph.D. student in Second Language Studies at the time and he applied for the position. Dr. Clark and Dr. Dyer were both members of the search committee for the position, along with Lauren Burns. According to Dr. Clark, the search committee scored qualified applicants on a scale of one to ten. Two applicants, Emad Gerges and Abdelrazzaq Ben Tarif, scored ten and seven respectively. Alkholy was given a score of six along with one other applicant. Two other applicants were given a score of five. UM only invited Gerges and Ben Tarif to interview for the position. UM ultimately offered the job to Gerges, the highest scoring applicant.

Following his rejection, Alkholy reached out to the Director of Equal Opportunity and Regulatory Compliance at UM, Kimberly DeVries. Alkholy met with DeVries and told her that he suspected discrimination in the hiring process. After following up on Alkholy's concerns, DeVries

communicated with Alkholy that the selected candidate had a Ph.D.—which was incorrect—and significant teaching experience in both English and Arabic. She also told Alkholy that the selected candidate had experience managing language programs. Alkholy was unsatisfied with the responses given by DeVries and he filed a formal charge of discrimination with the Equal Employment Opportunity Commission (EEOC). The EEOC gave Alkholy notice of his right to sue and Alkholy filed a timely complaint.

Alkholy alleges that UM discriminated against him based on his age, national origin, and his religion in violation of the Age Discrimination in Employment Act (ADEA) of 1990, 29 U.S.C. §§ 621-634, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-17. UM disputes Alkholy's claims, maintaining that it hired Gerges instead of Alkholy because Gerges was the better candidate and because of Alkholy's prior resignation.

*Standard*

Federal Rule of Civil Procedure 56 states that a motion for summary judgment shall be granted by the Court when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The movant "bears the initial responsibility of . . . demonstrat[ing] the absence of a genuine issue of material fact." ***Jones v. United States***, 936 F.3d 318, 321 (5th Cir. 2019) (alteration in original) (quotation mark omitted) (quoting ***Celotex Corp. v. Catrett***, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). The non-moving party must then demonstrate a genuine issue of material fact "such that a reasonable [factfinder] could return a verdict for the nonmoving party." ***Id.*** (alteration in original) (quoting ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "Although all justifiable inference must be drawn in favor of the non-movant, the non-movant still cannot defeat summary judgment with speculation, improbable inferences, or

unsubstantiated assertions." ***Likens v. Hartford Life & Accident Ins. Co.***, 688 F.3d 197, 202 (5th Cir. 2012) (citation omitted) (citing ***Env't Conservation Org. v. City of Dallas***, 529 F.3d 519, 524 (5th Cir. 2008); ***TIG Ins. Co. v. Sedgwick James of Wash.***, 276 F.3d 754, 759 (5th Cir. 2002)).

Furthermore, "[w]hen deciding a motion for summary judgment prior to a bench trial, the district court 'has the limited discretion to decide that the same evidence, presented to him or her as a trier of fact in a plenary trial, could not possibly lead to a different result.'" ***Jones***, 936 F.3d at 321-22 (quoting ***Johnson v. Diversicare Afton Oaks, LLC***, 597 F.3d 673, 676 (5th Cir. 2010)).[2] "The judge, *as trier of fact*, is in a position to and *ought to draw his inferences* without resort to the expense of trial." ***In re Placid Oil Co.***, 932 F.2d 394, 398 (5th Cir. 1991) (quoting ***Nunez v. Superior Oil Co.***, 572 F.2d 1119, 1124 (5th Cir. 1978)).

> [I]t makes little sense to forbid the judge from drawing inferences from the evidence submitted on summary judgment when that same judge will act as the trier of fact, unless those inferences involve issues of witness credibility or disputed material facts. If a trial on the merits will not enhance the court's ability to draw inferences and conclusions, then a district judge properly should "draw his inferences without resort to the expense of trial."

*Id.* (quoting ***Nunez***, 572 F.2d at 1124).

*Discussion*

**I.      *McDonnell Douglas*[3] Framework**

Claims of discrimination that rely upon circumstantial evidence are evaluated by the Court using the ***McDonnell Douglas*** framework. The ***McDonnell Douglas*** framework provides that a plaintiff must establish a prima facie case of discrimination to proceed. ***Chapple v. Tex. Health &***

---

[2] A bench trial is scheduled to begin in this case on April 20, 2026. *See* Notice of Trial, 3:25-cv-066, Dkt. No. 70.
[3] ***McDonnel Douglas Corp. v. Green***, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).

4

*Hum. Servs. Comm'n*, 789 F. App'x 985, 989 (5th Cir. 2019) (citing ***Patrick v. Ridge***, 394 F.3d 311, 315 (5th Cir. 2004)). To make his prima facie case, Alkholy must show that "(1) [he] belongs to a protected group; (2) he applied for and was qualified for the job; (3) he was not hired; and (4) the position was filled by someone outside the protected class." ***Id.*** (citing ***Blow v. City of San Antonio***, 236 F.3d 293, 296 (5th Cir. 2001)). In a case of age discrimination, the fourth requirement will be met if the position was filled by someone "substantially younger." ***O'Connor v. Consol. Coin Caterers Corp.***, 517 U.S. 308, 313, 116 S. Ct. 1307, 134 L. Ed. 2d 433 (1996).

Once a plaintiff has made a prima facie case, the burden shifts to the defendant to provide legitimate, non-discriminatory reasons for not hiring the plaintiff. ***Chapple***, 789 F. App'x at 989 (citing ***Patrick***, 394 F.3d at 315). Finally, the burden shifts back to the plaintiff. In the case of age discrimination, the plaintiff must then show that each reason offered by the defendant "was not true—but was instead a pretext for age discrimination—or that, even if the employer's reason is true, he was terminated because of his age." ***Miller v. Raytheon Co.***, 716 F.3d 138, 144 (5th Cir. 2013) (citing ***Gross***, 557 U.S. at 180). "To establish a claim under the ADEA, '[a] plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the "but-for" cause of the challenged employer decision.'" ***Palacios v. City of Crystal City, Tex.***, 634 F. App'x 399, 402 (5th Cir. 2015) (per curiam) (quoting ***Gross v. FBL Fin. Servs., Inc.***, 557 U.S. 167, 177-78, 129 S. Ct. 2343, 174 L. Ed. 2d 119 (2009)). However, for claims of religion or national origin discrimination, a plaintiff is not required to show but for causation. Instead, the burden shifts to the plaintiff to "establish that this reason was pretextual by producing evidence of disparate treatment or by showing that the employer's explanation is false or not believable." ***Crisp v. Sears Roebuck & Co.***, 628 F. App'x 220, 224 (5th Cir. 2015) (citing ***Rios v. Rossotti***, 252 F.3d 375, 379 (5th Cir. 2001); ***Laxton v. Gap, Inc.***, 333 F.3d 572, 578 (5th Cir. 2003)).

## II.     Prima Facie Case

The ADEA states that "[i]t shall be unlawful for an employer to fail or refuse to hire . . . any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age[.]" 29 U.S.C. § 623(a)(1). Title VII provides that "[i]t shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a)(1). Alkholy alleges that UM discriminated against him based on his age, national origin, and his religion.

UM does not dispute that Alkholy has made a prima facie case of religion and national origin discrimination, so those claims proceed to the second stage of the *McDonnell Douglas* framework. However, UM does argue that Alkholy has failed to make a prima facie case of age discrimination. For his age discrimination claim, Alkholy has undisputedly shown that (1) he is over 40 years old, and therefore a member of the class protected by the ADEA under 29 U.S.C. § 631(a); (2) he has the educational background and work experience necessary to qualify for the position; and (3) he was not hired by UM to fill the position. However, UM argues that Alkholy has not made a prima facie case because Gerges is not "substantially younger" than Alkholy.[4] "Neither the Supreme Court nor the Fifth Circuit has provided a bright-line rule to determine which

---

[4] At the time of the adverse decision by UM, Alkholy was 57 and Gerges was 52. Therefore, Gerges also belongs to the class protected by the ADEA. *O'Connor*, 517 U.S. at 313, states that "[b]ecause the ADEA prohibits discrimination on the basis of age and not class membership, the fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class."

6

age differences are considered substantial and which are considered insubstantial." ***Ruth v. Eka Chem., Inc.*** 92 F. Supp. 3d 526, 539 (N.D. Miss. Feb. 17, 2015) (citing ***Bienkowski v. Am. Airlines, Inc.***, 851 F.2d 1503, 1506 (5th Cir. 1988), *abrogated on other grounds by*, ***Rhodes v. Guiberson Oil Tools***, 75 F.3d 989, 994 (5th Cir. 1996)). "The Fifth Circuit has, however, stated in dicta that five years presents a 'close question' as to whether the age difference is legally sufficient, and has held four years to be insubstantial as a matter of law." *Id.* (citation omitted) (citing ***Rachid v. Jack in the Box, Inc.***, 376 F.3d 305, 309 (5th Cir. 2004); ***Earle v. Aramark Corp.***, 247 F. App'x 519, 523 (5th Cir. 2007)).

This case presents an age gap squarely in between ***Earle*** and ***Rachid***—according to the declaration of Dr. Clark, Gerges is four years, two months, and twenty-eight days younger than Alkholy. (Dkt 62; UM Exhibit 1 at 3). "In close calls . . . , this Court has considered the relative ages of the plaintiff and the replacement employee as evidence on the ultimate issue of proving 'but for' causation rather than as a basis for finding that the employee has failed to make a *prima facie* case." ***Flanner v. Chase Inv. Servs. Corp.***, 600 F. App'x 914, 919 (5th Cir. 2015). The Court notes that the age difference between Alkholy and Gerges is incredibly slim. However, because it falls between four and five years, this Court will—out of an abundance of caution—consider the gap to be a "close call," enough to make Alkholy's prima facie case, and move on to consider the age difference as a part of the "but for" causation proof.

**III.     Legitimate, Non-Discriminatory Reasons**

As Alkholy has made his prima facie case of age, national origin, and religious discrimination, the burden shifts to UM to provide legitimate, non-discriminatory reasons for choosing Gerges over Alkholy. ***Chapple***, 789 F. App'x at 989 (citing ***Patrick***, 394 F.3d at 315). UM offers three reasons: (1) Gerges was more qualified for the position than Alkholy; (2) Gerges

7

had recently taught at UM as a graduate assistant and Dr. Clark considered him to be an excellent teacher; and (3) Alkholy had previously resigned during the middle of an academic year, leaving Dr. Clark to teach the rest of Alkholy's scheduled classes. (Dkt. 63; UM Memorandum at 7). To support its claim that Gerges was the more qualified candidate, UM stated that Gerges

> taught an upper-level Arabic Conversation course as a graduate student at the University between 2022 and 2023; he oversaw implementation of an Arabic Flagship Program with the American Councils for International Education between 2016 and 2020, including responsibility for supervision of seven to ten instructors and oversight of curriculum; taught Arabic at the intermediate and advanced levels at the University of Texas at Austin's Arabic Flagship Program in 2012; and taught Arabic at all proficiency levels at Alexandria University in Egypt from 2009 to 2017.

(Dkt. 63; UM Memorandum at 6-7). UM argues that Alkholy's experience is mostly in teaching English as a foreign language, rather than Arabic. UM argues that while Alkholy does have some experience teaching Arabic as a foreign language, Gerges objectively has more experience. As for Alkholy's previous early resignation, UM states that he was specifically warned that it could affect his future job opportunities with the University. (Dkt. 63; UM Memorandum at 7). These are "facially sufficient legitimate, nondiscriminatory reasons for not hiring Alkholy[.]" *Id.*

## IV. Pretext

Finally, to survive summary judgment, Alkholy must demonstrate to the Court that a genuine issue of material fact exists regarding whether UM's proffered reasons are pretext for discrimination. ***Miller***, 716 F.3d at 144 (citing ***Gross***, 557 U.S. at 180). To do so, Alkholy must rebut each of UM's proffered reasons. *Id.* For the most part, Alkholy raises the same arguments for all three claims. The Court will first discuss Alkholy's arguments common to all three claims and then proceed to his individual arguments.

Alkholy first argues that he is the "clearly better qualified" candidate. ***Moss v. BMC Software, Inc.***, 610 F.3d 917, 923 (5th Cir. 2010).

8

> To show that he was "clearly better qualified" than [Gerges] and raise a fact question as to whether discrimination was a factor in [UM]'s hiring decisions, [Alkholy] must present evidence from which a jury could conclude that "no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." "[U]nless the qualifications are so widely disparate that no reasonable employer would have made the same decision," any "differences in qualifications are generally not probative evidence of discrimination[.]" Thus, "the bar is set high for this kind of evidence."

*Id.* (citations omitted) (fourth alteration in original).[5]

Alkholy argues that his Bachelor's degrees in both Arabic Language and Literature and in English, his Master's degree in TESOL, his coursework towards his Ph.D., his certification from the Defense Language Institute, his experience teaching college-level Arabic courses, and his ability to teach three dialects of Arabic far outweigh Gerges's qualifications, which Alkholy characterizes as a "then-incomplete M.A. and unverified 'Special Diploma[.]'" (Dkt. 66; Alkholy Memorandum at 13). However, when comparing the two resumes, this Court finds that Alkholy has failed to raise a genuine issue of material fact as to which of the candidates was clearly better qualified under the standard set forth in *Moss*, 610 F.3d at 923.

Gerges had more work experience teaching Arabic as a foreign language across all proficiency levels. Gerges taught an upper-level Arabic Conversation course at UM as a graduate assistant. Gerges oversaw the implementation and coordination of an Arabic Flagship Program from 2016 to 2020. He taught upper-level Arabic courses at Alexandria University from 2009 to

---

[5] This Court notes that UM cites abrogated law as the standard for evaluating whether the plaintiff is the "clearly better qualified" candidate. ***Price v. Fed. Express Corp***, 283 F.3d 715, 723 (5th Cir. 2002) ("the losing candidate's qualifications must 'leap from the record and cry out to all who would listen that he was vastly—or even clearly—more qualified for the subject job.'" (quoting ***Odom v. Frank***, 3 F.3d 839, 847 (5th Cir. 1993))). (Dkt. 63; UM Memorandum at 8). "The Supreme Court has expressly repudiated the requirement that the qualifications 'jump off the page.'" ***Awe v. Harris Health Sys.***, 163 F.4th 969, 975 (5th Cir. 2026) (quoting *Moss*, 610 F.3d at 927-28).

2017. In 2012, Gerges was a Lecturer of Arabic at the University of Texas at Austin. An overview of his resume reveals that Gerges has been teaching Arabic as a foreign language or overseeing an Arabic Flagship Program since 2008.

Alkholy, on the other hand, has taught Arabic as a foreign language at Montana State University from August 2019 to December 2020, at UM from June 2010 to January 2011, at the Defense Language Institute from January 2002 to August 2002, and at Sandwich Community School in the spring of 1995. Alkholy's other work experience consists of teaching English as a foreign language and teaching Arabic language and literature to native Arabic speakers. As for academic experience, Alkholy emphasizes that Gerges did not have his M.A. when he applied for the job and that Gerges had an unverified "Special Diploma" in teaching Arabic as a foreign language from Alexandria University in Egypt. Alkholy had two Bachelor's degrees, a Master's degree, Ph.D. coursework, and a certification from the Defense Language Institute. UM's job posting required candidates to have a Master's degree in Arabic or second language acquisition, which Alkholy had when he applied and which Gerges was in the process of getting when he applied and had obtained by the time he was appointed. The posting also asked that candidates demonstrate "substantial training and experience in teaching Arabic to American university students, as well as work in second language acquisition." Alkholy has failed to raise a genuine issue as to whether he was clearly better qualified than Gerges.[6] The fact that a reasonable person might have chosen Alkholy is not the standard. The pertinent question is whether any reasonable person, in the exercise of impartial judgment, could have chosen Gerges over Alkholy for the job in question. *Moss*, 610 F.3d at 923. While Gerges appears to be the more qualified candidate for

---

[6] It is noted for the purpose of this opinion that all facts are considered in the light most favorable to Alkholy.

the job, the Court need not make that determination. The Court concludes that Alkholy has failed to demonstrate that a reasonable person could not have selected Gerges over himself. *Moss*, 610 F.3d at 923.

Alkholy next argues that DeVries, the Director of the office of Equal Opportunity and Regulatory Compliance at the University, gave him false information about the selected candidate—that the candidate had a Ph.D., and that he had significant teaching experience, and prior managerial experience of a language program, which were not stated requirements on the job posting. (Dkt. 66; Alkholy Memorandum at 5-6). Alkholy alleges that the falsity of the information provided by DeVries leads to an inference of pretext on behalf of UM. ***Haire v. Bd. of Supervisors of La. State Univ. Agric. & Mech. Coll.***, 719 F.3d 356, 365 n.10 (5th Cir. 2013) ("[e]vidence demonstrating that the employer's explanation is false or unworthy of credence, taken together with the plaintiff's *prima facie* case, is likely to support and inference of discrimination *even without further evidence of defendant's true motive*." (citing ***Sandstad v. CB Richard Ellis, Inc.***, 309 F.3d 893, 897 (5th Cir. 2002))). Looking at Gerges's resume, it is clear that he did not have a Ph.D., but he did have significant teaching and managerial experience. (Dkt. 62; UM Exhibit 4). This Court notes that DeVries was not involved in the hiring decision, nor was having a Ph.D. a requirement for the job. UM states in its reply brief that DeVries merely misunderstood a communication from the Chair of the Modern Languages Department. (Dkt. 68; UM Reply at 9). Alkholy presents no evidence to dispute this. A simple mistake in relaying information does not make the information intentionally "false" or "unworthy of credence." *Id.* It is simply that—a mistake. Alkholy presents no evidence to show he was intentionally, or even negligently, misled by DeVries. The fact that DeVries—a non-decision maker—mistakenly told Alkholy that Gerges

11

had a Ph.D.—when only an M.A. was required—does not raise a genuine issue of material fact regarding pretext.

Alkholy alleges DeVries's justification for hiring Gerges "by citing [his] 'experience managing language programs'" is also pretextual because managerial experience was not a listed requirement for the job. Alkholy does not offer any support for this argument. The argument that UM could not consider positive attributes of a candidate that could contribute to better job performance but were not listed as required qualifications stretches the bounds of credibility. DeVries's statement that Gerges had managerial experience does not display pretext. Once again, DeVries was not a part of the selection committee who made the hiring decisions. Nor did her statement add a previously undisclosed job requirement to favor Gerges. At most, it showed a positive attribute of Gerges which may have been considered in the hiring process.

Alkholy argues that UM's formal position statement to the EEOC over-emphasized Gerges's work experience, while downplaying the academic and major dialect job requirements. Furthermore, the formal position statement never made any mention of Alkholy's prior resignation as a reason that he was not selected for the job. "An employer's inconsistent explanations for an employment decision 'cast doubt' on the truthfulness of those explanations." ***Caldwell v. KHOU-TV***, 850 F.3d 237, 242 (5th Cir. 2017) (quoting ***Gee v. Principi***, 289 F.3d 342, 347-48 (5th Cir. 2002)). Alkholy argues that UM's failure to mention his previous resignation and omission of other job requirements in the formal position statement is inconsistent with its current litigation strategy. The Court disagrees. UM has not been inconsistent in its reasons for not hiring Alkholy. UM has maintained that Gerges was the superior candidate throughout. The fact that Alkholy's previous resignation was not mentioned in the formal position statement does not make UM's reasons inconsistent in any light. Alkholy was told by Dr. Dyer in 2012 that his resignation could affect

his future job opportunities with the University and Alkholy acknowledged that fact. (Dkt. 62; UM Exhibit 2 at 59). "Here, when the alleged inconsistent statements are considered in their full context, the inconsistencies disappear." *Squyres v. Heico Companies, L.L.C.*, 782 F.3d 224, 234 (5th Cir. 2015). UM's emphasis on Gerges's superior work experience is not inconsistent. UM has continuously identified Gerges as the better candidate. The fact that his work experience weighed more heavily than other job requirements does not make UM's reasoning inconsistent. UM's failure to mention Alkholy's previous resignation as a reason for not selecting him in the formal position statement to the EEOC does not make its reasoning inconsistent either but rather adds support to its argument that Gerges was the better candidate. Alkholy was told by Dr. Dyer in 2012 that the resignation could affect a decision to hire him in the future. Because UM's rationale for not selecting Alkholy has remained consistent and he was aware that his prior resignation could affect his future job opportunities, this Court finds that UM's failure to mention his prior resignation in the formal position statement was not "necessarily illegitimate." *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 237-38 (5th Cir. 2015) (citing *Patrick*, 394 F.3d at 318). UM did not make any erroneous statements in its formal position statement to the EEOC. *Gill v. DIRTT Env't Sol. Inc.*, 790 F. App'x 601, 605 (5th Cir. 2019) (citing *Burton*, 798 F.3d at 237). This argument fails to raise a genuine issue of material fact as to pretext.

Alkholy posits that UM violated its own policy when it allowed potential candidates to have an "M.A. degree or equivalent . . . at the time of appointment" rather than at the time of application. According to Alkholy, UM did this to favor Gerges since he did not have his M.A. degree at the time of application, but he would have it by the time of appointment. Alkholy argues that this specific language in the 2023 job posting differed from the other job postings he had seen posted by UM for an Arabic Instructor. Alkholy provides an excerpt from UM's Search Committee

13

Guide, stating that candidates "must meet the posted minimum qualifications . . . at the time of completing the application." (Dkt. 66; Alkholy Exhibit UUUU at 9). Alkholy makes conclusory allegations that even though other departments at UM might have used the language "at the time of appointment" in their job postings, the Department of Modern Languages had not used the appointment language aside from the 2023 job posting. He makes this argument with no supporting evidence or caselaw. Further, Alkholy does not provide evidence to support whether this Search Committee Guide was in effect at the relevant time or whether it applied to the search committee that made the decision or formulated the job posting. In any case, Gerges *did* meet the minimum requirements in the job posting when he applied since he would have an M.A. degree at the time of appointment. Alkholy presents nothing aside from conclusory allegations that the job posting was tailored to favor Gerges. Even assuming that the posting was tailored to favor Gerges, it would have favored him over all candidates, regardless of any protected characteristics, such as age, religion, or national origin. Alkholy has failed to raise a genuine issue of material fact as to pretext.

Next, Alkholy argues that UM failed to verify Gerges's credentials even when his resume was "materially inconsistent." (Dkt. 66; Alkholy Memorandum at 15). Alkholy points to Gerges's resume stating that he was a "Master's/Ph.D. student of Modern Languages, TESOL" at UM. Alkholy urges that UM does not allow students to be in its Master's program and its Ph.D. program simultaneously according to Dr. Felice Coles, the Ph.D. program coordinator. He also argues that UM did not produce Gerges's "Special Diploma," thereby permitting a factfinder to infer "that the committee was not engaged in a good-faith evaluation of objective qualifications." (Dkt. 66; Alkholy Memorandum at 16). Alkholy did not produce a declaration or any kind of sworn statement from Dr. Coles, and he does not dispute that Gerges did obtain his Master's degree, which was the only relevant academic job requirement. Further, Dr. Clark stated in his declaration

14

that he considered the Special Diploma combined with Gerges's teaching experience to be "equivalent to a master's-level degree." [7] (Dkt. 62; UM Exhibit 1 at 3). Dr. Clark also stated that the search committee was aware Gerges did not possess a Ph.D. (Dkt. 62; UM Exhibit 1 at 3). Alkholy does not support this argument with any law or evidence, aside from conclusory statements. Therefore, this Court finds that this does not demonstrate a genuine issue of material fact as to pretext.

Alkholy argues that the screening process for candidates was opaque, "arbitrary and generated to justify a predetermined outcome[,]" and thus demonstrates that UM's reasons are pretextual. (Dkt. 66; Alkholy Memorandum at 16). Once again, Alkholy fails to cite any law in support of this argument. Dr. Clark stated in his declaration that "[t]he search committee rejected applicants that did not possess the necessary qualifications and scored the remaining candidates on a scale of one to ten based on their qualifications and experience." (Dkt. 62; UM Exhibit 1 at 2). Alkholy does not dispute Dr. Clark's declaration, other than to say that UM did not provide an objective rubric for the scaled scoring. This argument, being unsupported by evidence or law, fails to present a genuine issue of material fact.

Alkholy opines that UM did not provide evidence that it interviewed two candidates for the position by way of "scheduling emails, video conference links, or notes." (Dkt. 66; Alkholy Memorandum at 17). Dr. Clark did state in his declaration that UM "extended interview offers to two candidates, Emad Gerges . . . and Abdelrazzaq Ben Tarif . . . ." (Dkt. 62; UM Exhibit 1 at 2). Alkholy does not produce any evidence to dispute this, nor does he produce any law requiring UM

---

[7] Alkholy takes issue with the fact that UM has not produced a copy of Gerges's Special Diploma. However, UM was not required to produce a copy of the Special Diploma. At the summary judgment stage, UM must demonstrate that it did not select Alkholy for legitimate, non-discriminatory reasons, and it has done so. *Chapple*, 789 F. App'x at 989. The burden rests with Alkholy to rebut each of those reasons.

15

to further prove this fact. Alkholy's conclusory and self-serving statements are not sufficient to demonstrate pretext. This argument lacks merit.

For his final common argument, Alkholy claims that UM never notified him that he would not be eligible for rehire, in violation of its own policy. Alkholy states that UM does not have an "automatic 'not eligible for rehire' policy and that HR must notify an employee of such a decision." (Dkt. 66; Alkholy Memorandum at 18). UM has never claimed that Alkholy was not eligible for rehire. The fact that UM might consider that Alkholy previously resigned from employment with UM in the middle of the academic year, thereby placing a significant burden on the single instructor remaining, is common sense and does not make him ineligible for rehire. It is merely a factor considered in determining the appropriate hire. UM expressly considered Alkholy for the position of Arabic Instructor and graded him lower than Gerges and one other candidate. This argument is unsupported by the record and lacks merit.

Alkholy raises a single argument that applies only to his claims of religion and national origin. He argues that there is a pattern of homogeneity within the Arabic Instructors hired by UM. According to UM's responses to Alkholy's interrogatories, the Arabic Instructors, Dr. Yasmine Sedeek, Ahmed Mansour, and Emad Gerges, are all Egyptian in national origin. (Dkt. 68; UM Exhibit 7). However, they do differ in religion: Dr. Sedeek and Mansour are Muslim, while Gerges is Christian. (Dkt. 68; UM Exhibit 7).[8] Alkholy is Palestinian and Muslim. (Dkt. 66; Alkholy Memorandum at 10-11). In ***Plemer v. Parsons-Gilbane***, 713 F.2d 1127, 1137 (5th Cir. 1983), the

---

[8] There is a discrepancy about how many of the Arabic Instructors employed by UM identify as Muslim. The Declaration of Dr. Clark states that he is aware of one Arabic Instructor who identifies as Muslim. (Dkt. 62; UM Exhibit 1 at 3). UM's reply brief states that one Arabic Instructor identifies as Muslim, citing to its attached Exhibit 7. (Dkt. 68; UM Reply at 12). Exhibit 7 is UM's supplemental response to Alkholy's interrogatories. It states that Dr. Sedeek and Mansour, two of the Arabic instructors, both identify as Muslim. (Dkt. 68; UM Exhibit 7).

Fifth Circuit stated that "[a]n employee may use statistics to show that an employer's justification for a discriminatory act is pretext." Alkholy relies on this and argues that the fact that all the Arabic Instructors are Egyptian would allow a jury to infer discrimination. "[G]eneralized statistical evidence will rarely rebut a particularized nondiscriminatory rationale[.]" *EEOC v. Tex. Instruments*, 100 F.3d 1173, 1185 (5th Cir. 1996) (citing *Walther v. Lone Star Gas Co.*, 977 F.2d 161, 162 (5th Cir. 1992)). Alkholy fails to show more than generalized statistics—such as the applicant pools for the other Arabic Instructor positions—sufficient to raise a genuine issue of material fact on either his religion or national origin claims. His singular generalized statistic is the make-up of a three-person department. "The probative value of statistical evidence ultimately depends on all the surrounding facts, circumstances, and other evidence of discrimination." *Id.* (citing *Int'l Bhd. of Teamsters v. United* States, 431 U.S. 324, 340, 97 S. Ct. 1843, 52 L. Ed. 2d 396 (1977)). Alkholy has not provided this Court with statistical evidence that UM is consistently picking Egyptian candidates to the exclusion of other national origins. And this argument appears to undermine his religious discrimination claim, as at least one and possibly two other Arabic Instructors also identify as Muslim. (Dkt. 68; UM Exhibit 7). Although this Court recognizes that this is Alkholy's strongest argument for his national origin claim, "[t]hese statistics are not probative of discriminatory intent because they are devoid of context." *Cheatham v. Allstate Ins. Co.*, 465 F.3d 578, 583 (5th Cir. 2006) (citing *Tex. Instruments*, 100 F.3d at 1185).

For the reasons stated above, Alkholy has failed to rebut any—when the burden is to rebut each—of UM's legitimate, non-discriminatory reasons. Alkholy's biggest flaw is his failure to present evidence to support his claims. Other than receiving mistaken information regarding Gerges having a Ph. D. and showing the makeup of the three-person department, Alkholy relies on nothing but conjecture, improbable inferences, unsubstantiated assertions—and perhaps too

heavily upon Google—as to UM's policies and/or actions. While some of Alkholy's *arguments* might be enticing, they lack support in the record. Frankly, Alkholy has offered no evidence that his age was a consideration in the hiring process, and he certainly cannot prove that but for his age, UM would have selected him for the position. Furthermore, Alkholy has failed to raise a genuine issue of material fact as to pretext for discriminatory intent of behalf of UM for his religion and national origin claims. Likewise, Alkholy presents no evidence that his religion or national origin played any part in the hiring process. Therefore, UM is entitled to summary judgment as to all of Alkholy's discrimination claims.

*Conclusion*

For the reasons set forth above, UM's Motion for Summary Judgment [62] is GRANTED in full.

SO ORDERED, this the 12th day of March, 2026.

*[signature: Robert P. Chamberlin]*
UNITED STATES DISTRICT JUDGE